**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| LUIS ALBERTO NAVA-RUIZ, | ) | |
| Petitioner, | ) ) | |
| | ) | |
| v. | ) ) | |
| | ) | No. 2:26-cv-02391-SHL-atc |
| CHRISTOPHER BULLOCK, Field Office | ) | |
| Director of Enforcement and Removal | ) | |
| Operations, New Orleans Field Office, | ) | |
| Immigration and Customs Enforcement,[1] | ) ) | |
| Respondent. | ) | |

**ORDER GRANTING PETITION**

On April 7, 2026, Petitioner Luis Alberto Nava-Ruiz filed the Petition for a Writ of

Habeas Corpus Under 28 U.S.C. § 2241.  (ECF No. 1.)  Nava-Ruiz challenges his continued

immigration detention in the West Tennessee Detention Facility without a bond hearing.  (ECF

No. 1-3 at PageID 11.)  On April 9, the Court ordered Nava-Ruiz to supplement his petition to

clarify under what theory the Government has found him removable and to clarify the identity of

the respondents in this case.  (ECF No. 6.)  After Nava-Ruiz filed his supplement statement (ECF

No. 7), Respondent responded on April 17 (ECF No. 9).  Nava-Ruiz replied on April 20.  (ECF

No. 11.)

---

[1] The only proper Respondent in this action is Christopher Bullock, Field Office Director of Enforcement and Removal Operations, New Orleans Field Office, Immigration and Customs Enforcement.  See Rosciszewski v. Adducci, 983 F. Supp. 2d 910, 913–14 (E.D. Mich. 2013) ("[T]he ICE District Director is the proper respondent in a habeas petition brought by an alien, since the District Director has power over such aliens.").  Accordingly, the U.S. Department of Homeland Security and U.S. Immigration and Customs Enforcement are dismissed from the case.

For the reasons explained below, Nava-Ruiz is entitled to immediate release, and the

Petition is **GRANTED**.

### BACKGROUND

Nava-Ruiz, a citizen of Mexico, entered the United States at an unknown place in

September 2019.  (ECF Nos. 1-3 at PageID 12; 9 at PageID 39.)  He has remained in this country

ever since.  (ECF No. 1-3 at PageID 12.)  He is married to a U.S. citizen who is six months

pregnant with their child.  (ECF No. 11 at PageID 71.)  He and his wife "worship together at the

Nashville First Hispanic Adventist Church."  (Id.)  "He is embedded in a close-knit family and

community network that provides both accountability and support."  (Id.)  He has "no criminal

history of any kind."  (Id. at PageID 72.)

On February 23, 2026, Nava-Ruiz was apprehended while appearing for a scheduled

court hearing and taken into ICE custody.  (ECF No. 9 at PageID 39.)  On March 24, an

Immigration Judge ("IJ") held a bond hearing but denied his bond request because "the Court

lacks authority to redetermine bond or custody conditions."  (ECF Nos. 9 at PageID 39; 9-3 at

PageID 57.)  Nava-Ruiz remains at the West Tennessee Detention Facility in Mason, Tennessee.

(ECF No. 9 at PageID 40.)  The present Petition followed, the crux of which argues that Nava-

Ruiz was detained without a meaningful bond hearing.

Indeed, under recently adopted guidance from DHS and ICE, Nava-Ruiz is subject to

mandatory detention under 8 U.S.C. § 1225(b)(2)(A) of the INA and was allegedly declared

ineligible to be released on bond.  Until recently, however, most noncitizens in this situation

were given bond hearings under a different provision, § 1226(a).  See Godinez-Lopez v. Ladwig,

No. 25-CV-02962, 2025 WL 3047889, at *1 (W.D. Tenn. Oct. 31, 2025).  Section 1226(a)

allows immigration authorities to release immigrants from detention on a bond of $1,500 or

more, unless they require detention for certain reasons.  For example, noncitizens with certain criminal records may not be released on bond.  8 U.S.C. § 1226(c).

Section 1225(b)(2)(A), on the other hand, prohibits a bond for all "applicants for admission" who are "seeking admission."  "Applicants for admission" has been interpreted to mean recent arrivals, including those who have not been "physically present in the United States continuously" for the previous two years.  See 8 U.S.C. § 1225(b)(1)(A)(iii)(II) ("An alien described in this clause is an alien who . . . has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . .").

But, on July 8, 2025, ICE, in coordination with the Department of Justice ("DOJ"), issued a new policy with a novel interpretation of §§ 1225(b)(2)(A) and 1226(a).  Interim Guidance Regarding Detention Authority for Applicants for Admission, AILA (July 8, 2025), https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated.").  The policy reclassified all undocumented immigrants, even those who have lived in the United States for years, as "applicants for admission."  And all "applicants for admission" are required to be detained for removal proceedings without a bond hearing under § 1225(b)(2)(A).

Thus, ICE's new legal interpretation makes § 1225(b)(2)(A), not § 1226(a), the statute governing removal proceedings for all immigrants without legal status.  As a result, all undocumented immigrants awaiting removal are detained without a bond hearing.  This new interpretation was later adopted by the Board of Immigration Appeals ("BIA") in a published decision, Yajure Hurtado, 29 I. & N. Dec. 216, 220 (B.I.A. 2025).

3

The Petition alleges violations of Fifth Amendment due process, the Fourth Amendment protection against unreasonable seizures, and the Eighth Amendment prohibition on cruel and unusual punishment.  (ECF No. 1 at PageID 6–7.)  He seeks his immediate release.  (ECF No. 1-3 at PageID 17.)

In response, Respondent contends that Nava-Ruiz should be required to exhaust his administrative remedies; that § 1225, not § 1226, applies to him because he is an "applicant for admission"; that Nava-Ruiz should be treated for due process purposes as if stopped at the border; that no Fourth Amendment right was violated because his detention was reasonable; and that, if the Court finds that § 1226(a) applies to him, he should be granted a bond hearing and not immediate release.  (ECF No. 9 at PageID 40–46.)

## **ANALYSIS**

"Habeas relief is available when a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  Lopez-Campos v. Raycraft, No. 25-CV-12486, 2025 WL 2496379, at *3 (E.D. Mich. Aug. 29, 2025) (quoting 28 U.S.C. § 2241(c)(3)).  Nava-Ruiz challenges his detention without bond as violative of his constitutional rights.  (ECF No. 1 at PageID 6–7.)  The Court first examines whether Nava-Ruiz should be required to exhaust his administrative remedies, then it interprets the statutes to determine whether §1225 or § 1226 is applicable, and, finally, it analyzes the due process claim.

## I.     Exhaustion

If Congress "specifically mandates" exhaustion of administrative remedies, a petitioner must pursue relief through those administrative processes before seeking habeas relief. McCarthy v. Madigan, 503 U.S. 140, 144 (1992).  When Congress is silent on administrative exhaustion, "sound judicial discretion governs."  Id.  Thus, the doctrine of prudential exhaustion

holds that, in the absence of a textual exhaustion requirement, courts can use discretion to refuse

to hear habeas petitions that challenge bond determinations until a petitioner exhausts available

administrative remedies.  McCarthy, 503 U.S. at 144.  The Sixth Circuit has previously applied

this doctrine to dismiss petitions for lack of jurisdiction.  See Rabi v. Sessions, No. 18-3249,

2018 U.S. App. LEXIS 19661, at 1–2 (6th Cir. July 16, 2018).  In the context of immigrant

detention, some district courts require detained immigrants to exhaust their administrative

remedies—by appealing bond decisions to the BIA and receiving adverse decisions—before the

courts will review their habeas petitions.  E.g., Villalta v. Greene, No. 25-cv-01594, 2025 U.S.

Dist. LEXIS 169688, at *6–7 (N.D. Ohio Aug. 5, 2025).

In some cases, however, exhaustion is excused, and courts review habeas petitioner

claims.  Courts have reached these conclusions when (1) "the legal question is fit for resolution

and delay means hardship, or (2) exhaustion would prove futile."  Shalala v. Ill. Council on Long

Term Care, 529 U.S. 1, 13 (2000) (citation modified).

An issue is fit for judicial resolution when it presents a purely legal question.  Contreras-

Lomeli v. Raycraft, No. 25-cv-12826, 2025 U.S. Dist. LEXIS 207162, at *8 (E.D. Mich. Oct. 21,

2025) (citing Loper Bright Enters. v. Raimando, 603 U.S. 369, 385 (2024)).  Further, when

administrative procedures involve "an indefinite or unreasonable timeline," such delays result in

hardship.  Id.  If there is a risk of extended, "potentially unlawful detention" during such delay,

then exhaustion is excused.  Id.

As for futility, waiver of exhaustion "is appropriate when an administrative agency 'has

predetermined the disputed issue' by having a 'clearly stated position' that the petitioner is not

eligible for the relief sought."  Id. at *9 (quoting Cooper v. Zych, No. 09-CV-11620, 2009 U.S.

Dist. LEXIS 75423, at *2 (E.D. Mich. Aug. 25, 2009)).

Nava-Ruiz argues that exhaustion should not be required here because exhaustion would be futile, given that an IJ "has already applied Yajure-Hurtado to deny bond in this specific case." (ECF No. 11 at PageID 63.)  Respondent leans on previous exhaustion arguments made in cases such as Monge-Nunez v. Ladwig, No. 25-cv-03043, 2025 WL 3565348 (W.D. Tenn. Dec. 12, 2025).  (ECF No. 9 at PageID 41.)

Neither 8 U.S.C. §§ 1225 nor 1226 contain a textual exhaustion requirement for immigrants in ICE custody.  Similarly, 28 U.S.C. § 2241 lacks an exhaustion requirement.  And the Sixth Circuit has not yet spoken on the issue of prudential exhaustion in these recent cases. See Castaneda-Mondragon v. Acuna, No. 25-cv-03044, ECF No. 13 at PageID 101 (W.D. Tenn. Dec. 30, 2025).  Therefore, exhaustion may only be required here based on "sound judicial discretion."  McCarthy, 503 U.S. at 144.  But, exhaustion may be excused if "the legal question is fit for resolution and delay means hardship, or exhaustion would prove futile."  Shalala, 529 U.S. at 13.

Nava-Ruiz's failure to exhaust is excused.  First, the question he poses in the Petition is fit for resolution and undue delay would impose hardship on him.  The Parties do not dispute any material facts.  (See ECF Nos. 1-3 at PageID 12–13; 9 at PageID 39–40.)  Thus, deciding which statute applies to Nava-Ruiz's detention is a purely legal question, "which is right in a federal court's wheelhouse."  Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8.  Further, if Nava-Ruiz is required to pursue an appeal with the BIA, his appeal process would likely take six months or more.  See id. (citing Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 U.S. Dist. LEXIS 175767, at *9 (E.D. Mich. Sep. 9, 2025)).  Bond hearings were designed to prevent prolonged detention during removal proceedings, which are often lengthy.  Reyes, 2025 U.S. Dist. LEXIS 175767, at *9 (citations omitted).  Therefore, denying Nava-Ruiz the chance to have

a bond hearing merely because he did not appeal to the BIA may force him "to endure six months or more of potentially unlawful detention and thus would cause him great hardship." Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8.

Furthermore, the futility of exhaustion is an independent reason to excuse exhaustion here.  The BIA stated in Yajure Hurtado that § 1225(b)(2)(A) applies to detained illegal immigrants who "have been residing in the United States for years."  29 I. & N. Dec. at 220–21. Thus, any appeal would be futile, and exhaustion is excused.

## II.    Statutory Interpretation

"A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void[,] or insignificant."  Corley v. United States, 556 U.S. 303, 314 (2009) (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004)).  Each word within a statute must be given "'its ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'"  Kentucky v. Biden, 23 F.4th 585, 603 (6th Cir. 2022) (citation modified) (citing Walters v. Metro. Edu. Enters., Inc., 519 U.S. 202, 207, (1997)).

Custody over noncitizens during removal proceedings is generally governed by two statutes, 8 U.S.C. § 1225 (entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing") and § 1226 (entitled "Apprehension and detention of aliens").  Section 1225(b) requires mandatory detention, providing in relevant part:

> (b)    Inspection of applicants for admission
>            . . .
> (2)    Inspection of other aliens
>     (A)    In general
>               Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be

7

admitted, the alien shall be detained for a proceeding under
section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added).  An "applicant for admission" is a noncitizen

"present in the United States who has not been admitted."  8 U.S.C. § 1225(a)(1).  Under this

section, all applicants for admission "shall be detained."  Id. § 1225(b)(2)(A).

Section 1226(a), on the other hand, allows for discretionary detention, providing in

relevant part:

(a)    Arrest, detention, and release
On a warrant issued by the Attorney General, an alien may be arrested and
detained pending a decision on whether the alien is to be removed from the
United States.  Except as provided in subsection (c) and pending such
decision, the Attorney General—
(1)    may continue to detain the arrested alien; and
(2)    may release the alien on—
(A)    bond of at least $1,500 with security approved by, and
containing conditions prescribed by, the Attorney General .
. . .

8 U.S.C. § 1226(a) (emphasis added).  The exception in § 1226(c) prohibits releasing on bond a

noncitizen found to be inadmissible, who also,

is charged with, is arrested for, is convicted of, admits having committed, or admits
committing acts which constitute the essential elements of any burglary, theft,
larceny, shoplifting, or assault of a law enforcement officer offense, or any crime
that results in death or serious bodily injury to another person . . . .

Id. § 1226(c)(1)(E)(ii).  "Noncitizens arrested and detained under § 1226 have a right to request a

custody redetermination (i.e., a bond hearing) before an IJ."  Lopez-Campos, 2025 WL 2496379,

at *4 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)) (citation modified).  "The IJ evaluates whether there

is a risk of nonappearance or danger to the community."  Id. (citing Guerra, 24 I. & N. Dec. 37,

40 (B.I.A. 2006)).  Thus, except for those noncitizens with a record of certain criminal offenses,

8

§ 1226(a) allows immigration authorities to choose to release or detain noncitizens, subject to a hearing before an IJ on the issue.[2]

Nava-Ruiz argues that 8 U.S.C. § 1226(a), not § 1225(b)(2)(A), applies to his detention because he is "a young man who has lived continuously in the United States for seven years, who has built a life here, who is married to a U.S. citizen, and who was arrested on a civil immigration warrant at a state courthouse." (ECF No. 11 at PageID 64.) The government's theory, according to Nava-Ruiz, "would render the entire warrant-based detention framework of § 1226(a) largely superfluous as applied to anyone who entered without inspection." (Id.)

Respondent argues that § 1225(b)(2)(A), not § 1226(a), applies to Nava-Ruiz because he remains an "arriving alien" and thus is still "an 'applicant for admission' who is treated, for constitutional purposes, as if stopped at the border." (ECF No. 9 at PageID 41.) As a result, they assert that "he is subject to mandatory detention and not entitled to a bond hearing." (Id.)

The plain text of §§ 1225(b)(2)(A) and 1226(a) do not support Respondent's contention that Nava-Ruiz is "seeking admission." Beginning with the titles, the title of § 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." The title of § 1226(a) is "Apprehension and detention of aliens." Although titles of statutes are not controlling, they are "tools available for the resolution of a doubt about the meaning of a statute." Dubin v. United States, 599 U.S. 110, 121 (2023) (citation modified). Here, § 1225's title describes "arriving aliens" and those placed into "expedited removal"

---

[2] See 8 C.F.R. § 1236.1(c)(8), (d)(1) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien . . . . After an initial custody determination . . . the respondent may . . . request amelioration of the conditions under which he or she may be released. . . . [T]he immigration judge is authorized . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released . . . .").

proceedings. But Nava-Ruiz was not "arriving" when he was detained far away from the United States border, after having been in this country for six years. (ECF No. 1-3 at PageID 12.) Also, the record does not show that he was eligible for expedited removal proceedings.

Further, the subject matter of § 1225 undercuts Respondent's reading of the statute. Section 1225 describes the process of inspecting and removing immigrants actively crossing the border. See Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) ("That process of decision [described in § 1225] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible."). And Respondent's reading of § 1225(b)(2)(A) ignores several words and phrases within the statute itself. "If possible, every word and every provision is to be given effect." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012). But to apply § 1225(b)(2)(A) to Nava-Ruiz would render the following underlined words superfluous:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added). The record does not show that Nava-Ruiz was seeking admission at the time of his detention, nor does it show that he had received a determination by an immigration officer that he was "not clearly and beyond a doubt entitled to be admitted." The language of § 1225(b)(2)(A) makes sense in the context of the border, but not in a situation like this, when a noncitizen has been physically present, albeit unlawfully, for six years. To interpret "applicant for admission" using its ordinary meaning but outside the context of the provision, as argued by Respondent, is untenable.

Also, Respondent's interpretation of § 1225(b)(2)(A) would render § 1226(c) superfluous. That subsection carves out an exception to the general rule that an arrested

10

noncitizen is eligible for a bond. Under subsection (c), a noncitizen with a certain criminal history must be mandatorily detained. 8 U.S.C. § 1226(c)(1)(E)(ii) ("The Attorney General shall take into custody any alien who . . . is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . ."). But, under Respondent's reading of § 1225, all arrested noncitizens must be detained without bond. Thus, § 1226(c) would have no purpose. Yet, courts must "give effect, if possible, to every clause and word of a statute." Duncan v. Walker, 533 U.S. 167, 174 (2001). Nava-Ruiz's reading of the statute is the only one compatible with the presence of § 1226(c). What is more, Nava-Ruiz has no criminal record in the United States, so this mandatory detention provision cannot conceivably be applied to him. See § 1226(c)(1)(E)(ii).

The plain language of § 1226(a) describes Nava-Ruiz's situation. That section applies to the "apprehension and detention of aliens," providing that, upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Nava-Ruiz was charged with being removable and detained in West Tennessee. Thus, the Attorney General has discretion under this section. She "may continue to detain [him]" or she "may release [him] on bond." (Id.) But the Attorney General may not deny him the bond hearing to which he is entitled. See 8 C.F.R. § 1236.1(c)(8), (d)(1).

Not only is the plain language of §§ 1225 and 1226 sufficient to support a finding in Nava-Ruiz's favor, but the Congressional intent behind § 1226(a) is also supportive. In 2025, Congress passed the Laken Riley Act, adding a subsection to § 1226(c) to preclude persons with

11

criminal histories from receiving bond. Pub. L. No. 119-1, 139 Stat. 3 (2025). Congress would not have added exceptions to the broad rule of § 1226(a) if, as Respondent asserts, it intended § 1226(a) to give way to § 1225(b)(2)(A) in all cases. See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 400 (2010) ("The fact that Congress has created specific exceptions to [a rule] hardly proves that the [rule] does not apply generally. In fact, it proves the opposite."). On the contrary, Congress's recent attention to § 1226 points to its approval of the interpretation prevailing before July 2025. After all, "[i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless." Lopez-Campos, 2025 WL 2496379, at *8 (quoting Maldonado v. Olsen, No. 25-cv-3142, 2025 WL 237441, at *12 (D. Minn. Aug. 15, 2025)).

Thus, given the plain language of §§ 1225 and 1226, the arrest and detention of an illegal immigrant who has been continuously present in the United States for six years is governed by § 1226(a), and is subject to the discretionary bond process in that provision.

## III. Due Process

The Fifth Amendment protects every person from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The Due Process Clause extends to all 'persons' regardless of status, including non-citizens (whether here lawfully, unlawfully, temporarily, or permanently)." Lopez-Campos, 2025 WL 2496379, at *9 (citing Zadvydas v. Davis, 533 U.S. 678, 690 (2001)). In the context of civil immigration detention, the Sixth Circuit applies the balancing test from Mathews v. Eldrige, 424 U.S. 319 (1976), to evaluate the level of process owed a noncitizen. See, e.g., United States v. Silvestre-Gregorio, 983 F.3d 848, 852 (6th Cir. 2020). Those factors include (1) "the private interest that will be affected by the official

12

action," (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335.

Nava-Ruiz argues that Respondent violated the Due Process Clause of the Fifth Amendment by detaining him without a bond hearing.  (ECF No. 1 at PageID 6.)  Respondent, however, asserts that Nava-Ruiz's due process rights were not violated because, without a lawful entry, he should be "'treated' for due process purposes 'as if stopped at the border.'"  (ECF No. 9 at PageID 44 (quoting Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020)).)

Here, because § 1226(a) applies to Nava-Ruiz, he is owed the process given to him under that statute.  As for the Mathews factors, (1) Nava-Ruiz has a strong private liberty interest, (2) there is a high risk of erroneous deprivation if no IJ evaluates his risk of flight and danger to the community, and, (3) given Nava-Ruiz's clean criminal record, it will be difficult for the Government to demonstrate an interest in his detention.  Indeed, before he was apprehended, Nava-Ruiz was present in the United States for six years, was married, and developed a community.  (ECF No. 1-3 at PageID13.)  These facts indicate his ties to the United States, his desire to remain, and his expectation that he would remain free from government custody.

As a result, his detention without bond violated his liberty interest, which cannot be casually tossed aside.  Thus, Nava-Ruiz is entitled to immediate release.  See Villafranca Lara v. Ladwig, No. 26-CV-02079-SHL-tmp, 2026 WL 401204, at *10 (W.D. Tenn. Feb. 12, 2026) ("Because ICE purported to detain [petitioner] under § 1225(b)(2)(A), which includes no provision for a bond hearing, the Court will not now order a bond hearing under § 1226(a).").  Accordingly, his detention under the mandatory detention framework of § 1225(b)(2)(A) violates

13

his due process rights.  Thus, consistent with the Court's decision in <u>Godinez-Lopez</u>, and after consideration of the record, Nava-Ruiz's petition is **GRANTED**.[3]

### CONCLUSION

For the reasons stated above, the Petition is **GRANTED**.  Respondent is ordered to release Nava-Ruiz immediately.  Respondent is **ENJOINED** from pursuing Nava-Ruiz's detention under 8 U.S.C. § 1225(b)(2)(A).  Respondent is further **ORDERED** to file a Status Report with this Court on or before May 8, 2026, to certify compliance with this Order.

**IT IS SO ORDERED,** this 4th day of May, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Because the Petition is granted on other grounds, the Court need not reach the questions of whether Nava-Ruiz's detention violated the Fourth or Eighth Amendments.

14